UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
x------------------------------------------------------------------------x

| | | |
|---|---|---|
| HAMILTON UPTOWN LIMITED LIABILITY COMPANY and CREATIVE GOODS MERCHANDISE LLC, | : : | 16 CIV      ( ) |
| Plaintiffs, | : | **COMPLAINT** |
| against | : | Trial By Jury Demanded |
| SUNFROG, LLC, JOSH KENT, GEARLAUNCH INC., MICHAEL SCHELL, THATCHER CLAFLIN SPRING, DOE #1 (d/b/a TopUSAShirts.com), DOE #2 (d/b/a TeeUpdate.com), DOE #3 (d/b/a tees4urteam.com), DOE#4 (d/b/a sonmazing.com), DOE#5 (d/b/a teenava.com) and DOES 6-10, | : : : : : : | |
| Defendants. | : | |

x------------------------------------------------------------------------x

Plaintiffs HAMILTON UPTOWN LIMITED LIABILITY COMPANY ("HamiltonCo") and CREATIVE GOODS MERCHANDISE LLC ("CGM"), by their undersigned attorneys, complaining of the Defendants, allege:

PRELIMINARY STATEMENT

1. Plaintiffs bring this action in order to put an immediate stop to, and to obtain redress for, Defendants' blatant and purposeful infringement of the copyrights and trademarks used in connection with its productions of *Hamilton: An American Musical* (*"Hamilton"*). *Hamilton* is a musical about the life of American founding father Alexander Hamilton, with music, lyrics and book by Lin-Manuel Miranda. By its invocation of the rap music genre, it has become regarded as a seminal theatrical work. The logo associated with the production, shown below, has already become iconic:



2. Exploiting the production's popularity and goodwill, and in a brazen and improper effort to profit from the production's hard-earned success, Defendants have collaborated in a scheme to manufacture, sell, distribute and market garments exploiting the goodwill of and proprietary rights incident to the production.

3. Defendants contrive to design such garments as T-shirts, and then manufacture, market and sell them through Internet advertising and social media, collecting for themselves profits in the design, manufacture and sale stages.

4. Despite paying lip service to the copyright and trademark rights of their victims, in the form of elaborations of Digital Millenium Copyright Act procedures, Defendants are aware of their infringements and their marketing, manufacturing and sales activities are not entitled to "safe harbor" status under the DMCA.

### JURISDICTION AND VENUE

5. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1332, 1338 and 1367.

6. This Court has jurisdiction over the defendants under N.Y.C.P.L.R.§302(a)(1), because of the revenues they have solicited and obtained from New York customers arising from their joint purposeful conduct in soliciting business in New York utilizing

highly interactive websites as a means for establishing regular business with the New York forum.

7. Venue is proper in this District pursuant to 28 U.S.C. §1391.

## THE PARTIES

8. HamiltonCo is a New York limited liability company whose principal place of business is in New York County, New York. HamiltonCo is the production entity for the renowned musical *Hamilton* and exclusive licensee of certain other rights in the musical. HamiltonCo is the owner of the copyright in the "Hamilton logo" pursuant to United States Copyright Registration No. VA 1-985-097 (a true copy of which is attached as Exhibit 1; effective January 15, 2016), and is the owner of common law trademark rights in various trademarks incorporating the word "Hamilton" together with the copyrighted logo. Applications have been made to the United States Patent and Trademark Office for registration of the design plus words marks shown on Exhibit 2.

9. *Hamilton* has achieved a critical and popular reception rarely seen in the history of American musical theater. The current production on Broadway is sold out through mid-2017, and productions in other major venues are scheduled or anticipated. The demand for tickets to *Hamilton* continues to far exceed supply, and tickets command high prices.

10. In 2016, *Hamilton* was nominated for a record-setting 16 Tony Awards, winning 11, in addition to a Grammy Award and the 2016 Pulitzer Prize for Drama. More than 1,000,000 copies of its original cast album have been sold. The official Facebook page for *Hamilton* has more than 365,000 followers, its Twitter feed has more than 353,000 followers, and its Instagram account has more than 463,000 followers. These figures

reflect the importance of social media in the promotion of the production and sales of related merchandise. Even consumers who are unable to see a live performance are connected to and interact with *Hamilton* online.

11. In the Broadway theatrical industry, it is an important business element that producers promote their shows and generate revenue through the sale of merchandise ("merch"), that is, garments and other items that contain logos, images or other elements taken from a successful show. The Hamilton logo has achieved a special distinctiveness and fame important to such efforts, as is reflected by the following article on Bloomberg.com (April 21, 2016)

> "Even though the show hardly needs to market itself at this point, the promotional logo for the theatrical sensation *Hamilton* has become a coveted pop culture symbol by itself. A simple truncated star on a gold background, featuring the triumphant silhouette of star Lin-Manuel Miranda in the place of the missing point, the image is impactful and instantly recognizable."
>
> http://www.bloomberg.com/news/articles/2016-04-21/hamilton-posters-all-the-versions-that-didn-t-make-the-cut [visited September 13, 2016]

11. In exercising its right to exploit merchandise incorporating elements from *Hamilton,* HamiltonCo granted an exclusive sub-license to CGM to create, market and sell merchandise incorporating the *Hamilton* logo and trademark.

12. CGM is a limited liability company organized under the laws of New York, and maintains its principal place of business in New York County, New York.

13. CGM has incurred substantial expense in the design, manufacture, advertising and distribution of *Hamilton*-related merchandise

14. CGM and, through CGM, HamiltonCo, derive substantial revenue from *Hamilton*-related merchandise, which have been adversely affected by the diversion of sales caused by the infringing acts of the Defendants.

15. Upon information and belief, Defendant **SunFrog LLC** ("SunFrog") is a limited liability company organized under the laws of Michigan, whose principal place of business is Michigan.

16. SunFrog is in the business of design, manufacture, marketing and sales of customized garments, including T-shirts. SunFrog's website (visited September 1, 2016) http://press.sunfrog.com/media-kit-2/ projected $100 million in sales for 2015, and recited that SunFrog receives 15 million unique visitors to its website per month. SunFrog's solicitation of orders, and its fulfillment of orders in interstate commerce, have been to residents of New York.

17. Upon information and belief, Defendant **Josh Kent** is the Owner and Chief Executive Officer of SunFrog, and exercises control over its operations and policies, including those policies governing compliance with copyright and trademark laws.

18. Upon information and belief, Defendant **GearLaunch Inc.** ("GearLaunch") is a corporation organized under the laws of Delaware whose principal place of business is in San Francisco, California.

19. GearLaunch is in the business of collaborating with others, such as DOE defendants #1-5. Specifically, GearLaunch, under the pretext of "licensing" software, in fact creates and manages online "stores" of its clientele, by, among other things, securing URL's, receiving orders from consumers, commissioning the manufacture and fulfillment of such orders, processing returns, directing refunds for returned goods, and otherwise

5

acting as the manufacturer and distributor of goods designed by its collaborators. GearLaunch's solicitation of orders through those managed website "stores", and its fulfillment of orders in interstate commerce, have been to residents of New York.

20. Defendant **Michael Schell** has been identified as "Co Founder" of GearLaunch, charged with "Sales & Business Development". As such, he is involved in and exercises control over the qualification of individuals to become "collaborators" in the GearLaunch business, as well as the terms and conditions under which items are sold through the DOE websites. Schell also acts as the DMCA "notice" representative of the enterprises and websites set up by GearLaunch, including the named DOE defendants.

21. Defendant **Thatcher Claflin Spring** ("Spring") has been identified as the "Founder and CEO" of GearLaunch, and as such exercises control over its policies, standards, and compliance with copyright and trademark law.

22. **DOES #1 through 10** are persons or entities who have offered for sale to New York residents merchandise infringing the copyright and trademark of the Hamilton logo, in some cases incorporating text from *Hamilton.*

### DEFENDANTS' INTERRELATIONSHIPS

23. SunFrog is among the entities with whom GearLaunch contracts for manufacture, fulfillment and other services in its operations. Upon information and belief, SunFrog has performed such services in the manufacture and distribution of items containing infringing duplications of the Hamilton logo and trademarks. By way of example, GearLaunch has set up an online "store" for Doe#1, TopUSAshirts.com. A hyperlink on the TopUSAshirts.com website has directed users to fulfill their orders for infringing TopUSAshirts.com offerings to a website owned and operated by SunFrog. See:

http://shop.topusashirts.com/shop/Hamilton-Musical-sun/ [visited September 13, 2016]

and

https://www.sunfrog.com/20160908-034458-220384498.html?68080.[visited Sept. 13, 2016]

The following screen shots exemplify that relationship:





24. SunFrog is also in the business of soliciting designs and manufacturing and marketing apparel through its own websites. On websites it maintains, SunFrog has offered for sale articles incorporating the Hamilton logo and/or other designs associated with *Hamilton*, so creating the impression that such goods are offered from an authorized source. Those websites have in the past included the following:

> https://www.sunfrog.com/194323094.html?68080
> https://www.sunfrog.com/194323244.html?68080
> https://www.sunfrog.com/194323419.html?68080
> https://www.sunfrog.com/194323729.html?68080
> https://www.sunfrog.com/194332742.html?68080
> https://www.sunfrog.com/20160707-044413-173594769.html?68080
> https://www.sunfrog.com/194324195.html?68080
> https://www.sunfrog.com/20160707-042848-173585682.html?68080
> https://www.sunfrog.com/20160707-040133-173569930.html?68080
> http://shop.topusashirts.com/shop/Hamilton-Musical-sun/

25. Upon information and belief, entities such as GearLaunch and SunFrog pay collaborator designers a per item "designer commission", and on occasion an additional "referral commission" for orders placed through the social media links to websites that

GearLaunch has created for the collaborator designers.  Further upon information and belief, each of GearLaunch and SunFrog retains for itself proceeds from all sales of the items so marketed, net of the costs of manufacture and fulfillment and those collaborator fees.  GearLaunch and SunFrog are effectively the "seller" of the items so marketed.  It is believed that the collaborating designers do not acquire title to the goods so manufactured.

26. GearLaunch, SunFrog and Does #1-10, through Kent, Schell and Spring, have actual knowledge of the prospects for copyright infringement and trademark infringement arising from their solicitation of designs from the general public.  Such knowledge is demonstrated, *inter alia*, by extensive recitations invoking the Digital Millennium Copyright Act in the standard Terms and Conditions and Terms of Sale incorporated in the various websites set up by GearLaunch and SunFrog.

27. GearLaunch claims to perform a vetting of its collaborators before they are permitted to utilize GearLaunch's manufacture, marketing, sales, fulfillment and collection facilities.  In that vetting, GearLaunch does not require its collaborators to provide confirming information that a given design, such as those incorporating famous copyrights and trademarks as the Hamilton logo, is being used with the permission of the proprietors of the relevant copyright and/or trademark.  Instead, GearLaunch purports to rely simply upon a warranty by the designers that the designs are not infringing, and GearLaunch purports to have no involvement in the design selection process.

28. The copying and offering of such merchandise by the Defendants constitutes a false designation of the source of such goods arising from the implication that the use of the offending material has been approved by, and generates from, Plaintiffs.

29.  The offering of such merchandise by the Defendants constitutes a false implication that the designs and goods in question have been endorsed by Plaintiffs and/or by the creator of *Hamilton,* Lin-Manuel Miranda.

30.  In addition to constructive notice arising out of the notoriety of the Hamilton logo, Defendants have been made aware of their infringements by reason of several notices directed to Michael Schell, and to one Hubert Smith (who, at the same address and floor as Schell, has been designated the DMCA agent for DOE#3), and to SunFrog, but have continued their infringing conduct with respect to *Hamilton* and its associated properties.

## FIRST CAUSE OF ACTION
### (Infringement of Copyright)

31.  The allegations of Paragraphs 1-30 are realleged as if fully set forth.

32.  The duplication of the Hamilton logo infringed the copyright in that work of original art.

33.  Each defendant knew or should have known of the copyright in the infringed works induced, caused or materially contributed to the infringements, and had control over, and a direct financial interest in, the infringements.

34.  Upon information and belief, the infringing acts commenced after the application for registration of copyright in the Hamilton logo.

35.  Plaintiffs are entitled to an award of the disgorgement of Defendants' profits, damages from the diversion of sales from Plaintiffs' authorized products, or statutory damages as Plaintiffs might elect. Plaintiffs are also entitled to an award of reasonable attorneys' fees, to injunctive relief, costs and disbursements and such other relief as the Court might deem appropriate.

## SECOND CAUSE OF ACTION
### (Trademark Infringement and Unfair Competition)

36. The allegations of Paragraphs 1-35 are realleged as if fully set forth.

37. Defendants' acts complained of herein are likely to lead the relevant trade and public to associate Defendants, and the products offered for sale on websites they control or manage, with Plaintiffs' business and products, and are likely to cause confusion, mistake and deception.

38. Defendants' use of the Hamilton logo and other images and quotations associated with *Hamilton* has caused, and if not restrained by this Court, will continue to cause Plaintiffs serious and irreparable injury for which Plaintiffs have no adequate remedy at law.

## THIRD CAUSE OF ACTION
### (Dilution)

39. The allegations of Paragraphs 1-38 are realleged as if fully set forth.

40. Since its creation, the Hamilton logo has become famous and is instantly recognizable as the emblem of *Hamilton* and its related merch. Its notoriety is evidenced by the fact that Defendants have chosen to utilize it, along with various quotes from the production, in the garments they have offered for sale and sold.

41. Defendants are junior users of the Hamilton logo trademark.

42. Defendants' use of the Hamilton logo has diluted the unique selling power of the Hamilton logo trademark for merch, and has further diluted the trademark by using it in connection with goods inferior to those marketed by Plaintiffs.

43. Defendants' use of the Hamilton logo in interstate commerce violates 15 U.S.C. § 1125(c)(1), and their use of the Hamilton logo to make sales in the State of New York

violates N.Y. General Business Law § 360–*l*.

**WHEREFORE,** Plaintiffs demand as relief a judgment providing:

    1.    Preliminary and permanent injunction against each Defendant and their proprietors, managers, officers and agents barring them from marketing, manufacturing, selling, donating or otherwise dealing in merchandise bearing the Hamilton logo or other matter relating to *Hamilton* by image or quotation, or otherwise holding out in any manner whatsoever that each Defendant or its products or services, are in any way sponsored by, or associated or affiliated with Plaintiffs or the creator or any cast or crew member of *Hamilton.*

    2.    Disgorgement of all profits realized from the illegal exploitation of the Hamilton logo, and money damages for lost sales to Plaintiffs as may be established at trial, or in the alternative with respect to the First Cause of Action, statutory damages including an enhancement for willful violation of Title 17 U.S.C. and an award of reasonable attorneys' fees

together with interest, costs and disbursements and such further relief as the Court deems proper.

Dated: October 6, 2016        /s/ MARK J. LAWLESS (6570)
        Attorney for Plaintiffs
        733 Third Avenue, #1540
        New York, NY 10017
        (212) 754-0665; (917)886-8488
        Mark.Lawless79@gmail.com

        LEVINE PLOTKIN & MENIN LLP
        888 Seventh Avenue, 10th floor
        New York, NY, 10106
        (212) 245-6565
        Of Counsel